Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway, Fourth Floor
Long Beach, California 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710
-and-
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

*Counsel for Plaintiffs*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSA KOENIG, NILA CABISTAN, JENNIE HOLGUIN, SHARON MURPHY, SAMANTHA REX, ANA SANDEZ, ZENA PAVIA, AMIRAH HUSBANDS, and PEARL AMAECHI individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>LIME CRIME, INC., a New York corporation,<br><br>       Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs identified below (collectively, "Plaintiffs"), individually and on behalf of the Classes defined below of similarly situated persons, allege the following against Lime Crime, Inc., ("Lime Crime" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## SUMMARY OF ACTION

1.      This action seeks redress for Lime Crime's failure to secure and safeguard its customers' personal information, including credit and debit card information.

2.      In February 2015, Lime Crime disclosed a data breach involving the theft of customers' personal information with an unknown number of compromised customer accounts (the "Security Breach").

3.      According to Lime Crime, the following customer information was compromised in the Security Breach: name, address, credit/debit card account number, credit/debit card expiration date, credit/debit card security code, and LimeCrime.com username and password. ("Personal Information")

4.      Lime Crime's security failure enabled intruders to intercept, access and acquire Personal Information from within Lime Crime's systems and, on information and belief, subsequently make unauthorized purchases on consumers' credit and debit cards, while otherwise putting Class members' Personal Information at serious and ongoing risk. The intruders continue to use the Personal Information they obtained as a result of Lime Crime's inadequate security to exploit consumers and Class members throughout the country.

5.      The Security Breach was caused and enabled by Lime Crime's knowing violation of its obligations to abide by best practices and industry standards in protecting customers' Personal Information. Lime Crime failed to comply with security standards and allowed its customers' Personal Information to

CLASS ACTION COMPLAINT

1  be compromised, all in an effort to save money by cutting corners on security

2  measures that could have prevented or mitigated the Security Breach that

3  occurred.

4      6.      Lime Crime also failed to disclose the extent of the Security Breach

5  and notify its affected customers in a timely manner. Lime Crime failed to take

6  other reasonable steps to clearly and conspicuously inform its customers of the

7  nature and extent of the Security Breach. By failing to provide adequate notice,

8  Lime Crime prevented (and continues to prevent) Class members from protecting

9  themselves from the Security Breach.

10     7.      Plaintiffs retain a significant interest in ensuring that their Personal

11 Information is protected from further breaches, and seek to remedy the harms they

12 have suffered on behalf of themselves and similarly situated consumers whose

13 Personal Information was stolen as a result of the Lime Crime data breach.

14 Plaintiffs assert claims against Lime Crime for violations of state consumer

15 protection statutes, state data breach statutes, negligence, breach of implied

16 contract and unjust enrichment. Plaintiffs, on behalf of themselves and similarly

17 situated consumers, seek to recover damages, including actual and statutory

18 damages, and equitable relief, including injunctive relief to prevent a recurrence of

19 the data breach and resulting injury, restitution, disgorgement and reasonable costs

20 and attorneys' fees.

21                          **JURISDICTION AND VENUE**

22     8.      This Court has subject matter jurisdiction over this action under the

23 Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy

24 exceeds $5 million exclusive of interest and costs. At least one Plaintiff and

25 Defendant are citizens of different states. There are more than 100 putative class

26 members.

27     9.      This Court has personal jurisdiction over Defendant because it

28 maintains its place of business in California, regularly conducts business in

00096223.000.docx

California, and has sufficient minimum contacts in California. Defendant intentionally availed itself of this jurisdiction by marketing and selling products from California to thousands of consumers nationwide.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

11.     Plaintiffs reallege, as if fully set forth, each and every allegation herein.

12.     Plaintiff Tessa Koenig is a resident of Chula Vista, California. Plaintiff Koenig used her debit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Koenig's debit card information was used to make fraudulent purchases in an amount totaling approximately $600.  Plaintiff Koenig first learned of the fraudulent purchases when she reviewed her bank account statement on or about February 9, 2015. Plaintiff Koenig experienced restricted use of her funds as a result of the fraudulent purchases. Plaintiff Koenig experienced complete loss of access to funds as a result of the fraudulent purchases.  Plaintiff Koenig missed bill payments as a result of the fraudulent purchases.  Plaintiff Koenig had to borrow money to meet her needs as a result of the fraudulent purchases.  Plaintiff Koenig spent more than 5 hours resolving the problems caused by the fraudulent purchases.

13.     Plaintiff Nila Cabistan is a resident of Payson, Utah. Plaintiff Cabistan used her credit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Cabistan's credit card information was used to make multiple fraudulent purchases in an amount totaling approximately $500.  Plaintiff Cabistan first learned of the fraudulent purchases

00096223.000.docx

when she reviewed her credit card statement on or about April 28, 2015. Plaintiff Cabistan experienced restricted use of her credit card as a result of the fraudulent purchases. Plaintiff Cabistan experienced complete loss of access to her credit card as a result of the fraudulent purchases. Plaintiff Cabistan spent more than 15 hours resolving the problems caused by the fraudulent purchases.

14.     Plaintiff Jennie Holguin is a resident of San Diego, California. Plaintiff Holguin used her credit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Holguin's credit card information was used to make multiple fraudulent purchases in an amount totaling approximately $882.54.  Plaintiff Holguin first learned of the fraudulent purchases when she reviewed her credit card statement on or about March 1, 2015. Plaintiff Holguin was not fully reimbursed by her credit card issuer for the fraudulent charges. Plaintiff Holguin was charged interest/fees as a result of the fraudulent purchases. Plaintiff Holguin experienced restricted use of her credit card as a result of the fraudulent purchases. Plaintiff Holguin experienced complete loss of access to her credit card as a result of the fraudulent purchases. Plaintiff Holguin had to borrow money to meet her needs as a result of the fraudulent purchases.  Plaintiff Holguin spent more than 30 hours resolving the problems caused by the fraudulent purchases. Plaintiff Holguin has experienced identity theft since the Security Breach.

15.     Plaintiff Sharon Murphy is a resident of Baton Rouge, Louisiana. Plaintiff Murphy used her debit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Murphy's debit card information was used to make fraudulent purchases in an amount totaling approximately $55.  Plaintiff Murphy first learned of the fraudulent purchases when she reviewed her bank account statement on or about February 17, 2015. Plaintiff Murphy was not fully reimbursed by her bank for the fraudulent charges. Plaintiff Murphy was charged interest/fees as a result of the fraudulent purchases.

CLASS ACTION COMPLAINT

Plaintiff Murphy experienced restricted use of her funds as a result of the fraudulent purchases. Plaintiff Murphy experienced complete loss of access to funds as a result of the fraudulent purchases. Plaintiff Murphy had to borrow money to meet her needs as a result of the fraudulent purchases.  Plaintiff Murphy spent more than 2 hours resolving the problems caused by the fraudulent purchases.

16.     Plaintiff Samantha Rex is a resident of Florence, Kentucky. Plaintiff Rex used her credit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Rex's credit card information was used to make fraudulent purchases in an amount totaling approximately $50. Plaintiff Rex first learned of the fraudulent purchases when she reviewed her credit card statement on or about March 8, 2015. Plaintiff Rex was not fully reimbursed by her credit card issuer for the fraudulent charges. Plaintiff Rex was charged interest/fees as a result of the fraudulent purchases. Plaintiff Rex experienced restricted use of her credit card as a result of the fraudulent purchases. Plaintiff Rex experienced complete loss of access to her credit card as a result of the fraudulent purchases. Plaintiff Rex missed bill payments as a result of the fraudulent purchases. Plaintiff Rex had to borrow money to meet her needs as a result of the fraudulent purchases.  Plaintiff Rex spent more than 20 hours resolving the problems caused by the fraudulent purchases.

17.     Plaintiff Ana Sandez is a resident of Glendale, Arizona. Plaintiff Sandez used her debit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Sandez's debit card information was used to make fraudulent purchases in an amount totaling approximately $200.  Plaintiff Sandez first learned of the fraudulent purchases when she reviewed her bank account statement on or about January 2, 2015. Plaintiff Sandez was not fully reimbursed by her bank for the fraudulent charges. Plaintiff Sandez had to borrow money to meet her needs as a result of the

fraudulent purchases.  Plaintiff Sandez spent more than 7 hours resolving the problems caused by the fraudulent purchases.

18.     Plaintiff Zena Pavia is a resident of Seattle, Washington. Plaintiff Pavia used her debit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Pavia's debit card information was used to make multiple fraudulent purchases in an amount totaling approximately $460.  Plaintiff Pavia first learned of the fraudulent purchases on or about December 27, 2014, when she attempted to use her debit card at a grocery store and the transaction was denied due to insufficient funds. Plaintiff Pavia was not fully reimbursed by her bank for the fraudulent charges. Plaintiff Pavia experienced restricted use of her funds as a result of the fraudulent purchases. Plaintiff Pavia experienced complete loss of access to funds as a result of the fraudulent purchases. Plaintiff Pavia missed bill payments as a result of the fraudulent purchases. Plaintiff Pavia had to borrow money to meet her needs as a result of the fraudulent purchases.  Plaintiff Pavia spent more than 10 hours resolving the problems caused by the fraudulent purchases.

19.     Plaintiff Amirah Husbands is a resident of Waterbury, Connecticut. Plaintiff Husbands used her debit card to make at least one purchase from Lime Crime between October 4, 2014, and February 15, 2015.  Plaintiff Husbands' debit card information was used to make fraudulent purchases in an amount totaling approximately $200.  Plaintiff Husbands first learned of the fraudulent purchases when she checked her bank account balance on or about February 18, 2015. Plaintiff Husbands was charged interest/fees as a result of the fraudulent purchases. Plaintiff Husbands experienced restricted use of her funds as a result of the fraudulent purchases. Plaintiff Husbands experienced complete loss of access to funds as a result of the fraudulent purchases. Plaintiff Husbands missed bill payments as a result of the fraudulent purchases. Plaintiff Husbands had to borrow money to meet her needs as a result of the fraudulent purchases.  Plaintiff

1   Husbands spent more than 8 hours resolving the problems caused by the

2   fraudulent purchases.

3        20.    Plaintiff Pearl Amaechi is a resident of Baltimore, Maryland. Plaintiff

4   Amaechi used her debit card to make at least one purchase from Lime Crime

5   between October 4, 2014, and February 15, 2015.  Plaintiff Amaechi's debit card

6   information was used to make fraudulent purchases in an amount totaling

7   approximately $700.  Plaintiff Amaechi first learned of the fraudulent purchases

8   when she reviewed her online bank account statement on or about March 8, 2015.

9   Plaintiff Amaechi experienced restricted use of her funds as a result of the

10   fraudulent purchases. Plaintiff Amaechi experienced complete loss of access to

11   funds as a result of the fraudulent purchases. Plaintiff Amaechi missed bill

12   payments as a result of the fraudulent purchases. Plaintiff Amaechi had to borrow

13   money to meet her needs as a result of the fraudulent purchases.  Plaintiff

14   Amaechi spent more than 10 hours resolving the problems caused by the

15   fraudulent purchases.

16        21.    Plaintiffs would not have used their credit or debit cards to make

17   purchases from Lime Crime – indeed, they would not have shopped at Lime

18   Crime at all during the period of the Lime Crime data breach – had Lime Crime

19   told them that it lacked adequate computer systems and data security practices to

20   safeguard customers' Personal Information from theft, and had Lime Crime

21   provided them with timely and accurate notice of the Lime Crime data breach.

22        22.    Each of the Plaintiffs suffered actual injury from having his or her

23   credit or debit card account and Personal Information compromised and stolen in

24   and as a result of the Lime Crime data breach.

25        23.    Each of the Plaintiffs suffered actual injury and damages by paying

26   money to and purchasing products from Lime Crime during the Lime Crime data

27   breach that they would not have paid had Lime Crime disclosed that it lacked

28   computer systems and data security practices adequate to safeguard customers'

Personal Information and had Lime Crime provided timely and accurate notice of the data breach.

24.    Each of the Plaintiffs suffered actual injury in the form of damages to and diminution in the value of his or her personal and financial identity information—a form of intangible property that each of the Plaintiffs entrusted to for the purpose of purchasing Lime Crime's products and that was compromised in and as a result of the Lime Crime data breach.

25.    Each of the Plaintiffs has suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by his or her Personal Information being placed in the hands of criminals who have already misused such information stolen in the Lime Crime data breach via sale of Plaintiffs' and Class members' Personal Information on the Internet black market. Plaintiffs have a continuing interest in ensuring that their Personal Information, which remains in the possession of Lime Crime, is protected and safeguarded from future breaches.

26.    None of the Plaintiffs who suffered a loss of use of their account funds, or who had restrictions placed on their accounts, as a result of the Lime Crime data breach was reimbursed for the loss of access to or restrictions placed upon their accounts and the resulting loss of use of their own funds.

27.    Defendant Lime Crime, Inc. is a New York corporation based in Woodland Hills, California.

## STATEMENT OF FACTS

28.    Lime Crime operates a website LimeCrime.com through which it sells cosmetics.  Like many other retail businesses, Lime Crime accepts debit and credit card payments.

29.    On information and belief, an untold number of consumers became the victims of a data breach when their Personal Information was taken from Lime Crime's payment card information systems as a result of malicious software.

00096223.000.docx

According to Lime Crime, the following Personal Information was compromised in the Security Breach: name, address, credit/debit card account number, expiration date, security code, and LimeCrime.com username and password.

30.     According to Lime Crime, it discovered the Security Breach on February 11, 2015.

31.     According to Lime Crime, the Security Breach began on or about October 4, 2014, and ended on or about February 15, 2015.

32.     Lime Crime sent data breach notification emails to affected consumers on February 25, 2015.

33.     On information and belief, Lime Crime was first put on notice by consumers of the Security Breach as early as November 2014.

34.     On information and belief, Lime Crime attempted to suppress early reports by consumers of the Lime Crime Security Breach.

35.     Lime Crime's failure to comply with reasonable security standards provided Lime Crime with short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of Lime Crime's own customers – including Class members here – who have been subject to the Security Breach or otherwise have had their Personal Information placed at serious and ongoing risk.

36.     Lime Crime allowed widespread and systematic theft of its customers' Personal Information. Lime Crime's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' Personal Information.

*Security Breaches Lead to Identity Theft*

37.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying data to open financial accounts, receive government benefits and incur

00096223.000.docx

1    charges and credit in a person's name.[1] As the GAO Report states, this type of

2    identity theft is the most harmful because it may take some time for the victim to

3    become aware of the theft and can adversely affect the victim's credit rating. In

4    addition, the GAO Report states that victims of identity theft "face substantial

5    costs and time to repair the damage to their good name and credit record."[2]

6        38.    According to the Federal Trade Commission ("FTC"), identity theft

7    wreaks havoc on consumer's finances, credit history and reputation and can take

8    time, money and patience to resolve.[3] Identity thieves use stolen personal

9    information for a variety of crimes, including credit card fraud, phone or utilities

10   fraud, and bank/finance fraud.[4]

11       39.    A person whose personal information has been compromised may not

12   see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases,
> stolen data may be held for up to a year or more before
> being used to commit identity theft. Further, once stolen
> data have been sold or posted on the Web, fraudulent use
> of that information may continue for years. As a result,
> studies that attempt to measure the harm resulting from
> data breaches cannot necessarily rule out all future harm.

---

20   [1]*See* http://www.gao.gov/new.items/d07737.pdf (last visited December 16, 2015).

21   [2]*Id*. at 2.

22   [3]*See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (2012), http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf (last visited December 16, 2015).

24   [4] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id.*

00096223.000.docx

***Personal Identity and Financial Information is Valuable Property***

40.     At a FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[5]

41.     Though Commissioner Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[6]

42.     The FTC has also recognized that consumers' data is a new – and valuable – form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[7]

---

[5] *The Information Marketplace: Merging and Exchanging Consumer Data*, https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf (last visited December 16, 2015).

[6] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited December 16, 2015).

[7] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-

43.     Recognizing the high value that consumers place on their personal information, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent, consumers will make a profit from the surrender of their personal information.[8] This business has created a new market for the sale and purchase of this valuable data.[9]

44.     Consumers place a high value not only on their personal information, but also on the *privacy* of that data. Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[10]

45.     Notably, one study on website privacy determined that U.S. consumers valued the restriction of improper access to their personal information – the very injury at issue here – between $11.33 and $16.58 per website.[11]

---

exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited December 16, 2015).

[8] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited December 16, 2015).

[9] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited December 16, 2015).

[10] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011), pre-publication version available at http://www.heinz.cmu.edu/~acquisti/papers/acquisti-onlinepurchasing-privacy.pdf (last visited December 16, 2015).

[11] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at table 3, available at

46.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' personal information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

47.     In addition, members of the payment card industry ("PCI") established a Security Standards Counsel ("PCI SSC") in 2006 to develop PCI Data Security Standards ("PCI DSS") for increased security of payment processing systems.

48.     The PCI DSS provides, "PCI DSS applies to all entities involved in payment card processing – including merchants."[12] Lime Crime is a merchant that accepts payment cards.

49.     The PCI DSS requires a merchant to, among other things, protect cardholder data, maintain a vulnerability management program, implement strong access control measures, and regularly monitor and test networks.

50.     On information and belief, Lime Crime failed to comply with the PCI DSS, resulting in the Security Breach.

***Damages Sustained By Plaintiffs and the Class***

51.     A portion of the goods and services purchased from Lime Crime by Plaintiffs and the Class necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of personal information, including their credit and debit card information. Because Plaintiffs and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiffs and the Class incurred actual monetary damages in that they overpaid for the products purchased from Lime Crime.

---

http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.200.6483&rep=rep1&type=pdf (emphasis added) (last visited December 16, 2015).

[12] *Requirements anf Security Assessment Procedures, Version 3.0*, Payment Card Industry Data Security Standard, at 5 (Nov. 2013), https://www.pcisecuritystandards.org/documents/PCI_DSS_v3.pdf. (last visited December 16, 2015).

00096223.000.docx

52.     Members of the Class have suffered additional injury in fact and actual damages including monetary losses arising from unauthorized bank account withdrawals and/or related bank fees charged to their accounts.

53.     Plaintiffs and the Class suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Lime Crime wrongful conduct, particularly given the incidents of actual misappropriation from Class members' financial accounts, as detailed above.

54.     Moreover, as explained above, fraudulent use of cards might not be apparent for years. Therefore, consumers must expend considerable time taking these precautions for years to come.

55.     Plaintiffs and the Class suffered additional damages based on the opportunity cost and value of time that Plaintiffs and the Class have been forced to expend to monitor their financial and bank accounts as a result of the Security Breach. Such damages also include the cost of obtaining replacement credit and debit cards.

## CLASS ALLEGATIONS

56.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs assert their claims that Lime Crime violated state consumer statues (Count I) and state data breach notification statutes (Count II) on behalf of separate statewide classes defined as follows:

**Statewide [Consumer Protection or Data Breach Notification] Classes:** All residents of [name of State] whose Personal Information was compromised as a result of the data breach first disclosed by Lime Crime in February 2015.

57.     Plaintiffs assert the state consumer law claims (Count I) under the listed consumer protection laws of Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota,

Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wyoming, and the District of Columbia.

58.     Plaintiffs assert the state data breach notification law claims (Count II) on behalf of separate statewide classes in and under the respective data breach statutes of the States of Alaska, California, Colorado, Delaware, Georgia, Hawaii, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Montana, New Hampshire, New Jersey, North Carolina, North Dakota, Oregon, South Carolina, Tennessee, Virginia, Washington, Wisconsin and Wyoming, and the District of Columbia.

59.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs assert their common law claims for negligence (Count III), breach of implied contract (Count IV), and unjust enrichment (Count V) on behalf of a nationwide class, defined as follows:

**Nationwide Class:**
All residents of the United States whose Personal Information was compromised as a result of the data breach first disclosed by Lime Crime in February 2015.

60.     As alleged herein, Lime Crime is headquartered in Woodland Hills, California. Lime Crime's conduct resulting in the Lime Crime data breach took place exclusively, or primarily, in California. Accordingly, this Court has general jurisdiction over Lime Crime and original jurisdiction over Plaintiffs' claims. Applying California law, therefore, comports with due process.

61.     Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims for negligence (Count III), breach of implied contract (Count IV), and unjust enrichment (Count V) under the laws of the individual States and Territories of the United States, and on behalf of separate statewide classes, defined as follows:

00096223.000.docx

**Statewide [Negligence, Breach of Implied Contract, or Unjust Enrichment] Classes:**
All residents of [name of State] whose Personal Information was compromised as a result of the data breach first disclosed by Lime Crime in February 2015.

62.     Pursuant to Fed. R. Civ. P.23, Plaintiffs Tessa Koenig and Jennie Holguin (collectively "California Plaintiffs") assert a claim under the California Customer Records Act, California Civil Code section 1798.81.5, and the "unlawful prong" of California's Unfair Competition Law, California Business and Professions Code section 17200 (Count VI) on behalf of a California class defined as follows:

**California Class:**
All residents of California whose Personal Information was compromised as a result of the data breach first disclosed by Lime Crime in February 2015.

63.     Excluded from each of the above Classes are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as his or her judicial staff and immediate family members.

64.     Each of the proposed classes meet the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3):

65.     **Numerosity.** The proposed classes include many thousands of customers whose data was compromised in the data breach. While the precise number of Class members in each proposed class has not yet been determined, the massive size of the Lime Crime data breach indicates that joinder of each member would be impracticable.

66.     **Commonality.** Common questions of law and fact exist and predominate over any questions affecting only individual Class members. The common questions include:

00096223.000.docx

a.     whether Lime Crime engaged in the conduct alleged herein;

b.     whether Lime Crime's conduct constituted Deceptive Trade Practices (as defined below) actionable under the applicable consumer protection laws;

c.     whether Lime Crime had a legal duty to adequately protect Plaintiffs' and Class members' Personal Information;

d.     whether Lime Crime breached its legal duty by failing to adequately protect Plaintiffs' and Class members' Personal Information;

e.     whether Lime Crime had a legal duty to provide timely and accurate notice of the Lime Crime data breach to Plaintiffs and Class members;

f.     whether Lime Crime breached its duty to provide timely and accurate notice of the Lime Crime data breach to Plaintiffs and Class members;

g.     whether and when Lime Crime knew or should have known that its computer systems were vulnerable to attack;

h.     whether Plaintiffs and Class members are entitled to recover actual damages and/or statutory damages;

i.     whether Plaintiffs and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

67.     **Typicality.** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were injured through Lime Crime's uniform misconduct and their legal claims arise from the same core Lime Crime practices.

68.     **Adequacy.** Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs' counsel are very experienced in litigating consumer class actions and complex commercial disputes.

00096223.000.docx

69.     **Superiority.** A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. The injury sustained by each Class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Lime Crime. Even if it were economically feasible, requiring thousands of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

70.     Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Lime Crime has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

71.     Finally, all members of the purposed Classes are readily ascertainable. Lime Crime has access to addresses and other contact information for thousands of members of the Classes, which can be used to identify Class members.

**COUNT I**
**VIOLATIONS OF STATE CONSUMER LAWS**
**(ON BEHALF OF PLAINTIFFS AND THE SEPARATE STATEWIDE**
**CONSUMER LAW CLASSES)**

72.     Plaintiffs reallege, as if fully set forth, each and every allegation herein.

73.     Plaintiffs and members of the statewide Consumer Law Classes (the "Class" for purposes of this claim) are consumers who used their credit or debit cards to purchase products from Lime Crime primarily for personal, family, or household purposes.

00096223.000.docx

74.     Lime Crime engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of goods and services to consumers, including Plaintiffs and members of the Class.

75.     Lime Crime is engaged in, and its acts and omissions affect, trade and commerce. Lime Crime's acts, practices, and omissions were done in the course of Lime Crime's business of marketing, offering for sale, and selling goods and services throughout the United States and in each State and the District of Columbia.

76.     Lime Crime's conduct constitutes unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices (collectively, "Deceptive Trade Practices"), including, among other things, Lime Crime's:

a.     failure to maintain adequate computer systems and data security practices to safeguard customers' Personal Information;

b.     failure to disclose that its computer systems and data security practices were inadequate to safeguard customers' Personal Information from theft;

c.     failure to timely and accurately disclose the data breach to Plaintiffs and Class members;

d.     continued acceptance of Plaintiffs' and Class members' credit and debit card payments after Lime Crime knew or should have known of the security vulnerabilities that were exploited in the data breach; and

e.     continued acceptance of Plaintiffs' and Class members' credit and debit card payments after Lime Crime knew or should have known of the data breach and before it allegedly fixed the breach.

77.  By engaging in such Deceptive Trade Practices, Lime Crime has violated state consumer laws, including those that prohibit:

    a.  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

    b.  representing that goods and services are of a particular standard, quality or grade, if they are of another;

    c.  omitting material facts regarding the goods and services sold;

    d.  engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

    e.  unfair methods of competition;

    f.  unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices; and/or

    g.  similar prohibitions under the state consumer laws identified below.

78.  As a direct result of Lime Crime's violating state consumer laws, Plaintiffs and Class members suffered damages that include:

    a.  fraudulent charges on their debit and credit card accounts, some of which were never reimbursed;

    b.  theft of their Personal Information by criminals;

    c.  costs associated with the detection and prevention of identity theft;

    d.  costs associated with the fraudulent use of their financial accounts;

    e.  loss of use of and access to some or all of their account funds and costs incurred as a result of being unable to access those funds;

f.      costs and lost time associated with handling the administrative consequences of the Lime Crime data breach, including identifying, disputing, and seeking reimbursement for fraudulent charges, cancelling and activating payment cards, and shopping for credit monitoring and identity theft protection;

g.      purchasing products from Lime Crime that they would not have purchased, or would have not had paid the same price for, had they known of Lime Crime's Deceptive Trade Practices;

h.      impairment to their credit scores and ability to borrow and/or obtain credit; and

i.      the continued risk to their personal information, which remains on Lime Crime's insufficiently secured computer systems.

79.     Lime Crime's Deceptive Trade Practices violate the following state consumer statutes:

a.      The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7), and (27), *et seq.*;

b.      The Arizona Consumer Fraud Act, A.R.S. § 44-1522;

c.      The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq.*;

d.      The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200, *et seq.*

e.      The Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-105(1)(b), (c), (e) and (g), *et seq.*;

f.      The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), *et seq.*;

g.   The Delaware Consumer Fraud Act, Del. Code Ann. tit. 6 § 2513, *et seq*.;

h.   The District of Columbia Consumer Protection Act, D.C. Code Ann. §§ 28-3904(a), (d), (e), (f) and (r), *et seq*.;

i.   The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. ch. 501.204(1), *et seq*.;

j.   The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (3), (5), and (7), *et seq*.;

k.   The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), *et seq*.; and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), *et seq*.;

l.   The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), *et seq*.; and Idaho Code § 48-603C, *et seq*.;

m.   The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, *et seq*., and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. § 510/2(a)(5), (7) and (12), *et seq*.;

n.   The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), *et seq*.;

o.   The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, *et seq*. (Plaintiffs have obtained the approval of the Iowa Attorney General for filing this class action lawsuit as provided under I.C.A § 714H.7);

p.   The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), *et seq*.;

q.   The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.170(1) and (2), *et seq*.;

1      r.     The Louisiana Unfair Trade Practices and Consumer

2             Protection Law, La. Rev. Stat. Ann. § 51:1405(A), *et seq*.;

3      s.     The Maine Uniform Deceptive Trade Practices Act, 10

4             M.R.S.A. §§ 1212(1)(E) and (G), *et seq*., and the Maine Unfair

5             Trade Practices Act, 5 M.R.S.A. § 207, *et seq*.;

6      t.     The Maryland Consumer Protection Act, Md. Code

7             Commercial Law, § 13-301(1) and (2)(i), (ii) and (iv), (5)(i),

8             and (9)(i), *et seq*.;

9      u.     The Massachusetts Consumer Protection Act, Ma. Gen. Laws

10            Ann. Ch. 93A § 2(a), *et seq*.;

11     v.     The Michigan Consumer Protection Act, M.C.P.L.A.

12            § 445.903(1)(c),(e), (s) and (cc), *et seq*.;

13     w.     The Minnesota Uniform Deceptive Trade Practices Act, Minn.

14            Stat. § 325D.44, subd. 1(5), (7) and (13), *et seq*., the Minnesota

15            Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and

16            Minn. Stat. § 8.31, subd. 3(a);

17     x.     The Mississippi Consumer Protect Act, Miss. Code Ann. §§

18            75-24-5(1), (2)(b), (c), (e), and (g), *et seq*.;

19     y.     The Missouri Merchandising Practices Act, Mo. Ann. Stat. §

20            407.020(1), *et seq*.;

21     z.     The Montana Unfair Trade Practices and Consumer Protection

22            Act, Mont. Code Ann. § 30-14-103, *et seq*.;

23     aa.    The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-

24            1602, and the Nebraska Uniform Deceptive Trade Practices

25            Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq*.;

26     bb.    The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat.

27            Ann. § 598.0915(5) and (7), *et seq*.;

28

00096223.000.docx

cc.   The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), *et seq.*;

dd.   The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*;

ee.   The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, *et seq.*;

ff.   The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

gg.   The North Carolina Unfair Trade Practices Act N.C.G.S.A. § 75-1.1(a), *et seq.*;

hh.   The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*;

ii.   The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A) and (B)(1) and (2), *et seq.*

jj.   The Oklahoma Consumer Protection Act, 15 Okla. Stat. Ann. § 753(5), (7) and (20), *et seq.*;

kk.   The Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.608(1)(e), (g) and (u), *et seq.*;

ll.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*;

mm.   The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq.*;

nn.   The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), *et seq.*;

oo.   The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*;

pp.  The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5), and (7), *et seq.*;

qq.  The Texas Deceptive Trade Practices - Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*;

rr.  The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b), and (i), *et seq.*;

ss.  The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*;

tt.  The Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5), (6) and (14), *et seq.*;

uu.  The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*;

vv.  The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*; and

ww.  The Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii) and (xv), *et seq.* and § 40-12-108.

80.  As a result of Lime Crime's violations, Plaintiffs and members of the Class are entitled to injunctive relief, including, but not limited to: (1) ordering that Lime Crime engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Lime Crime's systems on a periodic basis, and ordering Lime Crime to correct any problems or issues detected by such third-party security auditors; (2) ordering that Lime Crime engage third-party security auditors and internal personnel to run automated security monitoring; (3) ordering that Lime Crime audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Lime Crime segment customer data by, among other things, creating firewalls and access controls so that if one area of Lime Crime is compromised, intruders cannot gain access to other portions of Lime Crime's systems; (5) ordering that Lime Crime purge, delete, and destroy in

1    a reasonable secure manner customer data not necessary for its provisions of

2    services; (6) ordering that Lime Crime conduct regular database scanning and

3    securing checks; (7) ordering that Lime Crime routinely and continually conduct

4    internal training and education to inform internal security personnel how to

5    identify and contain a breach when it occurs and what to do in response to a

6    breach; and (8) ordering Lime Crime to meaningfully educate its customers about

7    the threats they face as a result of the loss of their financial and personal

8    information to third parties, as well as the steps Lime Crime customers must take

9    to protect themselves.

10       81.    Because of Lime Crime's Deceptive Trade Practices, Plaintiffs and

11   the Class members are entitled to relief, including restitution of the costs

12   associated with the data breach, disgorgement of all profits accruing to Lime

13   Crime because of its Deceptive Trade Practices, attorneys' fees and costs, and a

14   permanent injunction enjoining Lime Crime from its Deceptive Trade Practices.

15       82.    Plaintiffs bring this claim on behalf of themselves and the Class

16   members for the relief requested and to benefit the public interest. This claim

17   supports the public interests in assuring that consumers are provided truthful, non-

18   deceptive information about potential purchases and protecting members of the

19   public from Lime Crime's Deceptive Trade Practices. Lime Crime's wrongful

20   conduct, including its Deceptive Trade Practices, has affected the public at large

21   because a large number of individuals residing in the U.S. have been affected by

22   Lime Crime's conduct.

23                              **COUNT II**
24       **VIOLATIONS OF STATE DATA BREACH NOTIFICATION STATUTES**
         **(ON BEHALF OF PLAINTIFFS AND THE SEPARATE STATEWIDE**
25                   **DATA BREACH STATUTE CLASSES)**

26       83.    Plaintiffs reallege, as if fully set forth, each and every allegation

27   herein.

28

84.     Legislatures in the states and jurisdictions listed below have enacted data breach statutes. These statutes generally apply to any person or business conducting business within the state that owns or licenses computerized data containing personal information. If the personal information is acquired or accessed in a way that compromises its security or confidentiality, the covered entity must notify the affected individuals in the most expedient time and manner possible and without unreasonable delay.

85.     The Lime Crime data breach constituted a security breach that triggered the notice provisions of the data breach statutes and the Personal Information taken includes categories of personal information protected by the data breach statutes.

86.     Lime Crime unreasonably delayed in informing Plaintiffs and members of the statewide Data Breach Statute Classes ("Class," as used in this Claim II), about the data breach after Lime Crime knew or should have known that the data breach had occurred.

87.     Plaintiffs and Class members were damaged by Lime Crime's failure to comply with the data breach statutes.

88.     Had Lime Crime provided timely and accurate notice, Plaintiffs and Class members could have avoided or mitigated the harm caused by the data breach. For example, they could have contacted their banks to cancel any affected cards, taken security precautions in time to prevent or minimize identity theft, or could have avoided using compromised payment cards during subsequent Lime Crime purchases.

89.     Lime Crime's failure to provide timely and accurate notice of the Lime Crime data breach violated the following state data breach statutes:

    a.     Alaska Stat. Ann. § 45.48.010(a), *et seq*.;

    b.     Cal. Civ. Code § 1798.80, *et seq*.;

    c.     Colo. Rev. Stat. § 6-1-716(2), *et seq*.;

1         d.      Del. Code Ann. tit. 6 § 12B-102(a), *et seq.*;

2         e.      D.C. Code Ann. § 28-3852(a), *et seq.*;

3         f.      Ga. Code Ann. § 10-1-912(a), *et seq.*;

4         g.      Haw. Rev. Stat. § 487N-2(a), *et seq.*;

5         h.      815 Ill. Comp. Stat. Ann. 530/10(a), *et seq.*;

6         i.      Iowa Code Ann. § 715C.2(1), *et seq.*;

7         j.      Kan. Stat. Ann. § 50-7a02(a), *et seq.*;

8         k.      Ky. Rev. Stat. Ann. § 365.732(2), *et seq.*;

9         l.      La. Rev. Stat. Ann. § 51:3074(A), *et seq.*;

10      m.      Md. Code Ann., Commercial Law § 14-3504(b), *et seq.*;

11      n.      Mich. Comp. Laws Ann. § 445.72(1), *et seq.*;

12      o.      Mont. Code Ann. § 30-14-1704(1), *et seq.*;

13      p.      N.H. Rev. Stat. Ann. § 359-C:20(1)(a), *et seq.*;

14      q.      N.J. Stat. Ann. § 56:8-163(a), *et seq.*;

15      r.      N.C. Gen. Stat. Ann. § 75-65(a), *et seq.*;

16      s.      N.D. Cent. Code Ann. § 51-30-02, *et seq.*;

17      t.      Or. Rev. Stat. Ann. § 646A.604(1), *et seq.*;

18      u.      S.C. Code Ann. § 39-1-90(A), *et seq.*;

19      v.      Tenn. Code Ann. § 47-18-2107(b), *et seq.*;

20      w.      Va. Code Ann. § 18.2-186.6(B), *et seq.*;

21      x.      Wash. Rev. Code Ann. § 19.255.010(1), *et seq.*;

22      y.      Wis. Stat. Ann. § 134.98(2), *et seq.*; and

23      z.      Wyo. Stat. Ann. § 40-12-502(a), *et seq.*

24      90.     Plaintiffs and members of each of the statewide Data Breach Statute

25 Classes seek all remedies available under their respective state data breach

26 statutes, including but not limited to damages, equitable relief, including

27 injunctive relief, treble damages, reasonable attorneys' fees and costs, as provided

28 by the applicable laws.

**COUNT III**
**NEGLIGENCE**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS, OR,**
**ALTERNATIVELY, PLAINTIFFS AND THE SEPARATE STATEWIDE**
**NEGLIGENCE CLASSES)**

91.   Plaintiffs reallege, as if fully set forth, each and every allegation herein.

92.   Lime Crime owed numerous duties to Plaintiffs and to members of the Nationwide Class, or, alternatively, members of the separate Statewide Negligence Classes (collectively, the "Class" as used in this Count). Lime Crime's duties included the following:

a.   to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting Personal Information in its possession;

b.   to protect their Personal Information using reasonable and adequate security procedures and systems that are compliant with the PCI-DSS standards and consistent with industry-standard practices; and

c.   to implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiffs and Class members of the Lime Crime data breach.

93.   Lime Crime owed a duty of care not to subject Plaintiffs, along with their Personal Information, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices. Lime Crime solicited, gathered, and stored Plaintiffs' and Class members' Personal Information to facilitate sales transactions.

94.   Lime Crime knew, or should have known, of the risks inherent in collecting and storing Personal Information and the importance of adequate

00096223.000.docx

1   security. Lime Crime also knew about numerous, well-publicized data breaches by

2   other national retailers.

3       95.    Lime Crime knew, or should have known, that its computer systems

4   did not adequately safeguard Plaintiffs' and Class members Personal Information.

5       96.    Because Lime Crime knew that a breach of its systems would damage

6   thousands of its customers, including Plaintiffs and Class members, it had a duty

7   to adequately protect their Personal Information.

8       97.    Lime Crime had a special relationship with Plaintiffs and Class

9   members. Plaintiffs' and Class members' willingness to entrust Lime Crime with

10  their Personal Information was predicated on the understanding that Lime Crime

11  would take adequate security precautions. Moreover, only Lime Crime had the

12  ability to protect its systems and the Personal Information of Plaintiffs and Class

13  members from attack.

14      98.    Lime Crime's own conduct also created a foreseeable risk of harm to

15  Plaintiffs and Class members and their Personal Information. Lime Crime's

16  misconduct included failing to implement adequate system and event monitoring,

17  and failing implement the systems, policies, and procedures necessary to prevent

18  this type of data breach.

19      99.    Lime Crime also had independent duties under state laws that

20  required Lime Crime to reasonably safeguard Plaintiffs' and Class members'

21  Personal Information and promptly notify them about the data breach.

22      100.   Lime Crime breached the duties it owed to Plaintiffs and Class

23  members in numerous ways, including:

24          a.    by creating a foreseeable risk of harm through the misconduct

25              previously described;

26          b.    by failing to implement adequate security systems, protocols

27              and practices sufficient to protect their Personal Information

28              both before and after learning of the data breach;

c.     by failing to timely and accurately disclose that their Personal Information had been improperly acquired or accessed.

101.   But for Lime Crime's wrongful and negligent breach of the duties it owed Plaintiffs and Class members, their personal and financial information either would not have been compromised or they would have been able to prevent some or all of their damages.

102.   The injury and harm that Plaintiffs and Class members suffered (as alleged above) was the direct and proximate result of Lime Crime's negligent conduct. Accordingly, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFFS AND THE SEPARATE STATEWIDE BREACH OF IMPLIED CONTRACT CLASSES)**

103.   Plaintiffs reallege, as if fully set forth, each and every allegation herein.

104.   When Plaintiffs and the members of the Nationwide class or, alternatively, the members of the separate Statewide Breach of Implied Contract Classes (collectively, the "Class" as used in this Count), provided their Personal Information to Lime Crime in making purchases from Lime Crime, they entered into implied contracts by which Lime Crime agreed to protect their Personal Information and timely notify them in the event of a data breach.

105.   Lime Crime invited its customers, including Plaintiffs and Class members, to purchase products from Lime Crime using credit or debit cards in order to increase sales by making purchases more convenient. The Personal Information also is valuable to Lime Crime, because Lime Crime uses it for ancillary marketing and business purposes.

106.   An implicit part of the offer was that Lime Crime would safeguard the Personal Information using reasonable or industry-standard means and would timely notify Plaintiffs' and the Class in the event of a data breach.

107.   Based on the implicit understanding, Plaintiffs and the Class accepted the offers and provided Lime Crime with their Personal Information by using their credit or debit cards in connection with purchases from Lime Crime during the period of the Lime Crime data breach.

108.   Plaintiffs and Class members would not have provided their Personal Information to Lime Crime had they known that Lime Crime would not safeguard their Personal Information as promised or provide timely notice of a data breach.

109.   Plaintiffs and Class members fully performed their obligations under the implied contracts with Lime Crime.

110.   Lime Crime breached the implied contracts by failing to safeguard Plaintiffs' and Class members' Personal Information and failing to provide them with timely and accurate notice when their Personal Information was compromised in the data breach.

111.   The losses and damages Plaintiffs and Class members sustained (as described above) were the direct and proximate result of Lime Crime's breaches of its implied contracts with them.

**COUNT V**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFFS AND THE SEPARATE STATEWIDE UNJUST ENRICHMENT CLASSES)**

112.   Plaintiffs reallege, as if fully set forth, each and every allegation herein.

113.   Plaintiffs and members of the Nationwide class or, alternatively, the members of the separate Statewide Unjust Enrichment Classes (collectively, the "Class" as used in this Count), conferred a monetary benefit on Lime Crime. Specifically, they purchased goods and services from Lime Crime at retail prices

and provided Lime Crime with their Personal Information by using their credit or debit cards for the purchases. In exchange, Plaintiffs and Class members should have been compensated by Lime Crime with the goods and services that were the subject of the transaction and by having Lime Crime process and store their Personal Information using adequate data security.

114.   Lime Crime knew that Plaintiffs and the Class conferred a benefit on Lime Crime. Lime Crime profited from their purchases and used their Personal Information for its own business purposes.

115.   Lime Crime failed to secure the Plaintiffs' and Class members' Personal Information, and, therefore, did not provide full compensation for the benefit the Plaintiffs and Class members provided.

116.   Lime Crime acquired the Personal Information through inequitable means because it failed to disclose the inadequate security practices previously alleged.

117.   Had Plaintiffs and Class members known that Lime Crime would not secure their Personal Information using adequate security, they would not have completed their purchases with Lime Crime.

118.   Plaintiffs and the Class have no adequate remedy at law.

119.   Under the circumstances, it would be unjust for Lime Crime to be permitted to retain any of the benefits that Plaintiffs and Class members conferred on it.

120.   Lime Crime should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and Class members proceeds that it unjustly received from them. In the alternative, Lime Crime should be compelled to refund the amounts that Plaintiffs and the Class overpaid.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT,**
**CALIFORNIA CIVIL CODE § 1798.81.5 AND THE CALIFORNIA**
**UNFAIR COMPETITION LAW'S UNLAWFUL PRONG**
**(ON BEHALF OF THE CALIFORNIA PLAINTIFFS AND THE**
**CALIFORNIA CLASS)**

121.   California Plaintiffs reallege, as if fully set forth, each and every allegation herein.

122.   "[T]o ensure that personal information about California residents is protected," the California Legislature enacted the Customer Records Act, California Civil Code §1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

123.   As described above, Lime Crime failed to implement and maintain reasonable security procedures and practices to protect the California Plaintiffs' and California Class members' personal information, and thereby violated California Civil Code section 1798.81.5.

124.   By violating section 1798.81.5 of the California Customer Records Act, Lime Crime is liable to the California Plaintiffs and California Class members for damages under California Civil Code section 1798.84(b).

125.   Because Lime Crime "violates, proposes to violate, or has violated," the California Customer Records Act, California Plaintiffs are entitled to injunctive relief under California Civil Code section 1798.84(e).

126.   In addition, Lime Crime's violations of the Customer Records Act constitute unlawful acts or practices under California's Unfair Competition Law, California Business and Professions Code sections 17200, et seq., which provides for restitution damages, and grants the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

CLASS ACTION COMPLAINT

127.   Accordingly, the California Plaintiffs request that the court enter an injunction that requires Lime Crime to implement reasonable security procedures and practices, including, but not limited to: (1) ordering that Lime Crime engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Lime Crime's systems on a periodic basis, and ordering Lime Crime to promptly correct any problems or issues detected by such third-party security auditors; (2) ordering that Lime Crime engage third-party security auditors and internal personnel to run automated security monitoring; (3) ordering that Lime Crime audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Lime Crime segment customer data by, among other things, creating firewalls and access controls so that if one area of Lime Crime is compromised, intruders cannot gain access to other portions of Lime Crime's systems; (5) ordering that Lime Crime purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services; (6) ordering that Lime Crime conduct regular database scanning and securing checks; (7) ordering that Lime Crime routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (8) ordering Lime Crime to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Lime Crime customers must take to protect themselves.

128.   California Plaintiffs and members of the California Class seek all remedies available under the California Customer Records Act and the California Unfair Competition Law, including but not limited to, restitution, damages, equitable relief, including injunctive relief, reasonable attorneys' fees and costs, and all other relief allowed under the applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes set forth herein, respectfully request that the Court enter judgment in their favor that:

A.     certifies the Classes requested, appoints the Plaintiffs as class representatives of the applicable classes and their undersigned counsel as Class counsel;

B.     awards the Plaintiffs and Class members appropriate monetary relief, including actual and statutory damages, restitution, and disgorgement;

C.     on behalf of Plaintiffs and the Statewide Classes, enters an injunction against Lime Crime's Deceptive Trade Practices and requires Lime Crime to implement and maintain adequate security measures, including the measures specified above to ensure the protection of Plaintiffs' Personal Information, which remains in the possession of Lime Crime;

D.     on behalf of Plaintiffs and the Statewide Data Breach Statute Classes, awards appropriate equitable relief, including an injunction requiring Lime Crime to promptly notify all affected customers of future data breaches;

E.     orders Lime Crime to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

F.     awards Plaintiffs and the Classes pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

G.     awards such other and further relief as this Court may deem just and proper.

00096223.000.docx

1

## JURY TRIAL DEMANDED

2     Plaintiffs demand a trial by jury on all issues so triable.

3

4     DATED:  January 21, 2016          **GREEN & NOBLIN, P.C.**

5

6

7                                       By:  __/s/ James Robert Noblin__
                                             James Robert Noblin

8

9                                       Robert S. Green
                                        4500 East Pacific Coast Highway
10                                      Fourth Floor
                                        Long Beach, CA 90804
11                                      Telephone: (562) 391-2487
                                        Facsimile: (415) 477-6710
12                                      -and-
                                        2200 Larkspur Landing Circle, Ste. 101
13                                      Larkspur, CA  94939
                                        Telephone: (415) 477-6700
14                                      Facsimile: (415) 477-6710
                                        Email:  gnecf@classcounsel.com
15
                                        William B. Federman
16                                      (to be admitted *Pro Hac Vice*)
                                        Oklahoma Bar No. 9467
17                                      **FEDERMAN & SHERWOOD**
                                        10205 North Pennsylvania Avenue
18                                      Oklahoma City, OK 73120
                                        Telephone:  (405) 235-1560
19                                      Facsimile:  (405) 239.2112
                                        Email:  wbf@federmanlaw.com
20
                                        Cornelius P. Dukelow
21                                      (to be admitted *pro hac vice*)
                                        Oklahoma Bar No. 19086
22                                      **ABINGTON COLE + ELLERY**
                                        320 South Boston Avenue, Suite 1130
23                                      Tulsa, Oklahoma 74103
                                        Telephone:  (918) 588.3400
24                                      Facsimile:  918.588.3400
                                        Email:  cdukelow@abingtonlaw.com
25
                                        *Counsel for Plaintiffs*
26

27

28

00096223.000.docx                    CLASS ACTION COMPLAINT